[L. A. No. 9257. Department One.—February 27, 1928.]

MORRIS M. RUDELSON, Respondent, v. P. B. PAULES
et al., Appellants.

Loeb, Walker & Loeb for Appellants.

Haas & Dunnigan for Respondent.

SEAWELL, J.—P. B. Paules and Max Hartfield, appellants, were, and for some months before the earliest contract considered herein had been, the owners of the real property which furnishes the basis of the action in which judgment for respondent was rendered.

Prior to June 23, 1923, Morris M. Rudelson, respondent, was occupying as a tenant of appellants a room of the building erected on said real property in which he conducted a market. Some time prior to June 23, 1923, appellants had decided to construct a new building on said real prop-

erty. Accordingly the old building was destroyed and removed from the lot to make room for said contemplated new structure. Grant McCartney was a real estate broker and promoter, doing business under the firm name of Grant McCartney Company. On June 22, 1923, appellants and Grant McCartney Company entered into a contract, of which the following are the pertinent provisions:

"We hereby agree that if we enter into a written agreement with Mr. L. A. Smith or any of his associates or if you furnish us with any other parties with whom we enter into an agreement for the building and financing of a building on our property at the southwest corner of Temple and Broadway, Los Angeles, to make you our exclusive agents for negotiating the original leases for said entire building. . . . In the event said building is not built or financed by Mr. L. A. Smith or his associates or any other parties furnished by you, we are to be under no obligations to carry out this contract."

Ten days thereafter, to wit, July 2, 1923, Grant McCartney Company and respondent Rudelson entered into the following contract:

"Received of Morris Rudelson ($2000.00) two thousand dollars, being deposit on five year lease at the rate of ($1000.00) one thousand dollars per month, on property owned by Messrs. Hartfield & Paules, at the southwest corner of Temple and Broadway, Los Angeles, California, described as follows: [Here follows description of same property described in first contract.]

"It is hereby agreed, that Mr. Rudelson will deposit with owners of said property ($4000.00) four thousand dollars more, upon completion of building and

"It is further agreed he will receive (7) seven per cent per annum on ($5000.00) five thousand dollars of said deposit including ($2000.00) two thousand dollars received this date, same to be held as security for said lease.

"This agreement subject to approval of owners."

Respondent did not at any time have knowledge of the limitation placed upon the Grant McCartney Company by the contract of June 22, 1923. Being desirous of remaining at his old location, respondent, upon suggestion of appellants, visited them on June 29 for the purpose of agreeing

upon terms on which he would occupy a room in said reconstructed building. Upon this last visit appellants informed respondent that they could not talk business with him as to lease terms, inasmuch as they had turned over the entire matter of leasing said rooms to their agent, Grant McCartney. Respondent was advised to take the matter up with Grant McCartney and this advice eventuated in the lease or contract made July 2, 1923, between respondent and Grant McCartney Company. Respondent paid to Grant McCartney Company the sum of $2,000 as acknowledged in said lease and contract, and thereafter said Grant McCartney absconded with said funds. Respondent brought an action for money had and received in the court below, and recovered a judgment against appellants. The point is made by them that Grant McCartney had no authority from them to make the contract entered into by Grant McCartney Company, and respondent and, therefore, it could in no way bind them. It is true that the financing and leasing contract made by appellants and Grant McCartney Company did not upon its face authorize Grant McCartney Company to bind appellants to the terms of the contract entered into by the former with respondent, and if this was all there was to the case we would be compelled to reverse the judgment. While the testimony of the respondent was flatly contradicted by evidence offered by appellants, it was sufficient, if credited by the court, to compel us to affirm the judgment. In addition to the testimony of the respondent as above pointed out, there are some circumstances which tend to corroborate respondent's testimony. He testified that at the time he visited appellants and they directed him to the Grant McCartney Company they telephoned to said company in advance that respondent would call upon said company and requested said company to give respondent's proposals full consideration as he was a former tenant. There was some slight corroboration of this evidence adduced by another witness. Another circumstance which gives support to respondent's contention that Grant McCartney Company was held out as the ostensible agent of appellants exists in the fact that during the period of negotiation between respondent and Grant McCartney Company there remained upon said premises a large and con-

spicuous sign placed there by Grant McCartney, bearing the following words:

"Exclusive Agents.
Grant McCartney Co.
Pico 302
Main Office
937–39 Merchants' Nat. Bank Bldg.

Will Lease:

| | |
|---|---|
| Hotel | Roof Garden |
| Drug Store | Restaurant |
| Market | Florist |
| Bank | Barber Shop |

Or any other Suitable Business."

Appellants had knowledge that said sign was upon their premises. Respondent had also observed it and it could have had no other effect upon him than to confirm him in the belief that Grant McCartney Company was fully authorized to contract with persons who desired to become tenants of the building proposed to be constructed.

We are of the opinion that the record contains evidence sufficient to conclude appellants under either of the two following sections of the Civil Code:

"2316. Actual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess."

"2317. Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."

What we mean to say is that the positive testimony of the respondent, which was credited by the court, supports the theory of actual authority; also the acts of appellants support the theory of ostensible authority conferred upon the agent, Grant McCartney Company.

Appellants contend that the findings of fact are inconsistent with themselves and contradictory, and, further, that the probative and ultimate facts are in conflict and in such cases the ultimate facts control. We think no serious conflict exists in the instant case. The term "agent" where used is interchangeable with "principal,"

inasmuch as the act of the agent was the act of the principal. ▮ If, however, the probative facts upon which the ultimate fact must rest lead to a conclusion repugnant to the ultimate fact, the latter must be held to be invalidated by the former. (*Hammond Lumber Co.* v. *Barth Investment Corp.*, 202 Cal. 601 [262 Pac. 29]; 24 Cal. Jur. 972.)

The material findings are supported by the evidence and we find no substantial reason for a reversal of the case.

Judgment affirmed.

Curtis, J., and Preston, J., concurred.